UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION – BAY CITY

IN RE:

    WOODROW FULLER,
        Debtor.
_____/

Case No. 13-22203-dob
Chapter 13 Proceeding
Hon. Daniel S. Opperman

THOMAS MCDONALD, JR.
STANDING CHAPTER 13 TRUSTEE,
    Plaintiff/Counter-Defendant,

KIMBERLY KRAMER, PLC
KIMBERLY A. KRAMER, JD
REINERT & REINERT
JOSHUA M. REINERT, JD
OSTROM LAW FIRM
GREGORY OSTROM, JD
KLIMMEK LAW FIRM
TADD KLIMMEK, JD
MATTHEW L. FREY, JD
JAMES J. HAYES, IV, PLC
JAMES J. HAYES, IV, JD
MICHAEL J. SHOVAN, PC
MICHAEL J. SHOVAN, JD
LAW OFFICES OF RUSSELL PERRY, JR.,
RUSSELL PERRY, JR., JD
ROBERT SHELTON, PLC
ROBERT SHELTON, JD
JACK A. WEINSTEIN, PC
JACK A. WEINSTEIN, JD
THE NYE LAW OFFICE
TODD H. NYE, JD
COON & ELMY PC
SHANTELE ELMY, JD
THE LAW OFFICE OF PETER J. RIEBSCHLEGER
PETER J. RIEBSCHLEGER, JD
ROBERT P. DENTON AND ASSOCIATES
ROBERT P. DENTON, JD
    Plaintiffs,

v.

FINANCIALEDGE COMMUNITY
CREDIT UNION,
    Defendant/Counter-Plaintiff.
_____/

Adversary Proceeding
Case No. 19-2031-dob

1

OPINION REGARDING MOTIONS FOR SUMMARY JUDGMENT

Introduction

Chapter 13 debtors commit to a reorganization plan that can last 3-5 years and sometimes longer if the Covid pandemic impacted a debtor. During this time, a debtor may need to acquire a different motor vehicle but lacks the cash to make an outright purchase. If so, the debtor needs to borrow money and it is this need that has spawned countless disputes. This question has come up again in this Court in this Adversary Proceeding brought before the Court in the form of Motions for Summary Judgment by a Plaintiff, Thomas McDonald, and the Defendant, FinancialEdge Community Credit Union ("FinancialEdge").

Historical Background

Since the Bankruptcy Code was adopted, certain individual debtors could elect to file a Chapter 13 Petition and reorganize their debts by filing a Chapter 13 Plan, having that Plan confirmed, and then paying a Chapter 13 Trustee who in turn distributes those payments to creditors as described in the Plan. Initially, there was no prohibition on a debtor from borrowing money and they often did, sometimes with disastrous results. To put a brake on this activity, Chapter 13 Trustees and some creditors insisted that a debtor have some sort of oversight on their borrowing habits. The most current version of this oversight is in Paragraph Q of Part V – Additional Terms, Conditions and Provisions of the Model Plan, which reads as follows:

> Q. PROHIBITION AGAINST INCURRING POST-PETITION DEBT: While this case is pending, the debtor shall not incur a debt in excess of $2,000.00 without first obtaining approval of either this Court or of the Chapter 13 Trustee. If the Chapter 13 Trustee stipulates to entry of an Order allowing Debtor to incur post-petition Debt, Debtor shall be permitted to file the Stipulation signed by the Trustee and to submit an Order to the Court on an *ex parte* basis without notice to creditors or other parties in interest.

This language accomplishes a number of results:

2

1. It allows a debtor to borrow small amounts of money without any question, thus giving the debtor the ability to finance affordable items or services without hamstringing the debtor.

2. It requires the debtor to undergo some oversight for larger amounts so as to avoid the debtor from misusing credit which often was the cause of the debtor's bankruptcy.

3. It puts the Chapter 13 Trustee on the frontline of this oversight.

4. If the Chapter 13 Trustee approves the borrowing, the debtor has a fast and efficient means to complete the transaction, but without notice to creditors or other parties in interest.

5. If the Chapter 13 Trustee does not approve the borrowing, the debtor may resort to the Court for approval, but must wait and incur more expense and possibly miss the opportunity to purchase an item. However, creditors and parties in interest receive notice.

## The Intermediate History

After the 2008 recession, Chapter 13 cases increased dramatically. In turn, more requests to borrow funds were sent to the Chapter 13 Trustees. Some creditors were disenchanted with the speed of approvals by Mr. McDonald and questioned his method and protocols for instant loan approval. FinancialEdge was one of those creditors and initiated an action against him in the case of *In re Woodrow Fuller*. Mr. McDonald responded and this Court concluded the dispute was ripe for mediation and appointed Chief Judge Shefferly as the mediator. As a result of mediation, Mr. McDonald and FinancialEdge agreed to resolve their differences. This Court entered an Order Resolving Pending Disputes in Bankruptcy ("Order") on May 26, 2015:

### ORDER RESOLVING PENDING DISPUTES IN BANKRUPTCY

Upon stipulation between Financial Edge Community Credit Union ("Credit Union") by and through its attorneys Wenzloff & Wenzloff, P.L.C., and Thomas E. McDonald ("Trustee"), by and through his attorneys Lambert Leser, Attorneys at Law, agree to resolve the pending disputes in the Bankruptcy that are the subject of the Mediation Order entered by Judge Opperman in the Bankruptcy case on March 5, 2015, and the Court being fully advised on the premises.

3

It is hereby **ORDERED** as follows:

1. The Trustee shall hereinafter require the following information and terms to be present and included in each pleading seeking court approval of post-confirmation financing to which the Trustee approves and stipulates in each and every Chapter 13 case administered by this Trustee:

    a. An affirmative statement that the debtor(s) is not in arrears on the Chapter 13 plan payments at the time of borrowing.

    b. A list of vehicles owned by the debtor(s) and a statement as to the number of licensed drivers in the household.

    c. An explanation as to why the debtor(s) needs to purchase a vehicle and if the need is because of mechanical difficulties with a current vehicle, then a statement as to efforts made to get the current vehicle repaired and cost of repair and why repair is not a viable option.

    d. A statement of explanation of the debtor(s)' efforts to obtain financing for the purchase of a vehicle and the terms of finance which were offered to the debtor(s), including whether the debtor(s) offered to any current lienholder the opportunity to finance the purchase of the vehicle and, if so, such lienholder's response.

    e. A statement of explanation of whether the proposed purchase will require an increased monthly payment from the debtor(s) and, if so, an explanation as to how or where the debtor(s) will acquire the funds necessary to make the increased payment.

    f. A statement that the payment to the post-confirmation creditor will be paid direct and that the Plan payment as confirmed will remain in full force and effect and that there will be no diminution in the payout to unsecured creditors as a result of the purchase of a replacement vehicle as compared to the terms of the Plan as confirmed unless: (i) the creditor files and the Court allows after proper notice and hearing, a Section 1305 claim; or (ii) the debtor(s) files and the Court allows after proper notice and hearing, a Section 1329 plan modification.

2. The Trustee shall as soon as reasonably practicable (i) send an email to his normal distribution list informing the recipients of the contents of paragraph 1 of this settlement agreement; and (ii) schedule a town hall meeting at a time and place to be selected by the Trustee for the purpose of informing the bar of the contents of paragraph 1 of this settlement agreement.

3. Credit Union withdraws its motion to compel the Trustee to reimburse the estate (ECF No. 88).

4. The Trustee does not object to the Credit Union's motion to compel the Trustee to distribute funds (ECF No. 113) to the extent of any funds that are presently held by the Trustee and that were received by the Trustee from the debtor(s) in the Bankruptcy Case prior to the filing of the fee application on March 30, 2015 by the debtor(s)' attorney (ECF No. 114).

It is further **ORDERED** that the Stipulation to Resolve Pending Disputes in Bankruptcy, a copy of the Settlement Agreement which was attached to the Stipulation as Exhibit "A", is hereby authorized upon entry of this order.

It is further **ORDERED** that the terms and conditions of this Order shall be immediately effective and enforceable upon its entry and that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and enforcement of this Order.

Since the Order, any pleading seeking Court approval of post-confirmation financing approved by Mr. McDonald has contained the language stated above. In 2019, Mr. McDonald stopped signing stipulations regarding post-confirmation vehicle financing, so debtors have filed motions requesting that relief, which the Court has heard on an expedited basis.

2019 Cases and Thereafter

Although many requests to borrow were approved by Mr. McDonald and later by the Court, a general dissatisfaction surfaced. To address this dissatisfaction, Mr. McDonald initiated this Adversary Proceeding and fifteen Chapter 13 Debtor attorneys and law firms joined him in an Amended Complaint. The Amended Complaint has three counts:

I. Injunctive and Declaratory Relief because third party due process rights are deprived contrary to the United States Constitution and Federal Rule of Civil Procedure 83.

II. Injunctive and Declaratory Relief that the Order does not apply to third parties because it operates as a burden on parties who were not part of that Order.

III. Declaratory Relief to Limit Trustee Exposure to Liability.

FinancialEdge filed various Motions to Dismiss, which the Court partially granted and allowed Plaintiffs leave to amend their Complaints. Thus, the general issues remained open.

5

FinancialEdge filed an Answer on February 14, 2020 and then propounded discovery to the Plaintiffs to find out the nature, extent, and amount of the burden claimed by each Plaintiff. Each Plaintiff then filed Motions for a Protective Order, basically claiming that the information requested was burdensome, irrelevant, available to Defendant without discovery, protected by attorney-client privilege and the work-product doctrine.

During hearings in this case, counsel for Mr. McDonald suggested that settlement discussions might be useful. The Court allowed the parties the opportunity to explore settlement, but also set deadlines to file motions. To date, settlement has not occurred, so the Court heard oral arguments on the Motions for Summary Judgment.

### Mr. McDonald's Motion for Summary Judgment

Mr. McDonald filed a Motion for Summary Judgment focusing on Count III, positing that the Order only applies to him and FinancialEdge and in only the *Fuller* case. Citing Sixth Circuit authority, he first listed the five elements of a declaratory judgment action:

1. Whether the declaratory action would settle the controversy.

2. Whether the declaratory action would serve a useful purpose in clarifying legal relations in issue.

3. Whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata."

4. Whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction.

5. Whether there is an alternative remedy which is better or more effective.

*Scottsdale Ins. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008) (citing *Grand Trunk W. R.R. Co. v. Consol. Rail Co.*, 746 F.2d 323, 326 (6th Cir. 1984)).

Focusing on Count III, Mr. McDonald alleges that the Order eliminates his discretion to approve a vehicle purchase in that if the elements of the Order are not disclosed in a motion, he is

prohibited from approving the financing. On one hand, if he disregards the Order, he is unnecessarily exposed to liability to FinancialEdge and other similarly situated creditors. On the other hand, if he follows the Order, he alleges he is exposed to liability to debtors, their attorneys, and the other plaintiffs because the Order directly conflicts with the Model Plan. For good measure, he alleges he is exposed to liability for the additional costs and possible lost vehicle purchases suffered by debtors and their attorneys. Accordingly, he seeks declaratory judgment that the Order does not apply to him other than in *Fuller*. In his Motion for Summary Judgment, he argues there are only issues of law because of the legal principles of stare decisis and constitutional due process. As to stare decisis, his argument is that the Order does not bind this Court. *Camreta v. Greene*, 563 U.S. 692, 709 (2011). Likewise, due process considerations prohibit the binding of a principle to individuals or entities that were not parties to that action. In short, "everyone should have his own day in court." *Taylor v. Sturgell*, 553 U.S. 880, 893 (2008).

To further explain his position, Mr. McDonald pointed out that neither the doctrines of res judicata or collateral estoppel could apply because all the other Plaintiffs were not parties to the Order. Nevertheless, the application of the Order violates the due process of parties not involved in Fuller and has elevated the Order to a de facto local rule without following the process required by Federal Rule of Bankruptcy Procedure 9029(a)(1).

### FinancialEdge Responds

FinancialEdge sees the issues differently. First, as to Mr. McDonald's Motion, the Order merely approved the settlement agreement between it and Mr. McDonald and the doctrine of stare decisis does not apply. Second, due process is not violated because the affected parties – the debtors and their attorneys – have complete access to the Court by way of motion. Since 2020, this avenue has been used exclusively. Additionally, FinancialEdge disputes that any protected property or liberty interest is at stake.

FinancialEdge also filed a Motion for Summary Judgment seeking dismissal of all counts. It argues the first count was already dismissed by the Court previously. It further argues Count II should be dismissed because the Plaintiffs waived these counts in previous pleadings and in previous hearings regarding discovery. FinancialEdge also argues the action is not timely under Federal Rule of Civil Procedure 60 and Federal Rule of Bankruptcy Procedure 9024. *Blachy v. Butcher*, 129 F. App'x 173, 179 (6th Cir. 2005). If timely, Financial Edge argues that Plaintiffs have not met the elements of either Federal Rule of Civil Procedure 60(b)(5) or (6) in that they cannot point to any new development or any other justifiable reason to set aside the order. Moreover, FinancialEdge points out the Order is not an order but a settlement agreement between it and Mr. McDonald and not subject to rules governing orders. Finally, FinancialEdge argues Plaintiffs are barred by laches from continuing their actions.

## Mr. McDonald Replies

Mr. McDonald takes issue with every argument made by FinancialEdge. First, he argues all three counts have unresolved questions of fact that make granting summary judgment premature. Second, FinancialEdge did not address the elements of declaratory judgment actions. Third, he disagrees that Count I was dismissed in that the Amended Complaint which added parties cured any deficiency previously found by the Court. While he agrees that Financial Edge properly pointed out that he does not face personal liability at this time, if he follows the Order, any such claim could be raised at any time. He also takes issue with the waiver arguments made by FinancialEdge and claims it overstates those arguments and that more is needed to constitute a legal waiver of rights. Also, he cites numerous cases that stretch the applicable time period to set aside orders to as long as 34 years. *Charter Twp. of Muskegon v. City of Muskegon*, 303 F.3d 755 (6th Cir. 2002).

Finally, he also counters by arguing that the predicates of Fed. R. Civ. P. 60(b)(5) and (6) do exist and that laches is an affirmative defense that FinancialEdge must raise and, in this case, is not relevant.

## Jurisdiction

This Court has subject matter jurisdiction over this proceeding under 28 U.S.C. § 157, 28 U.S.C. § 1334, and E. D. Mich. LR 83.50(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate).

## Summary Judgment Standard

Federal Rule of Civil Procedure 56 is made applicable in its entirety to bankruptcy adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 7056(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Choate v. Landis Tool Co.*, 486 F. Supp. 774 (E.D. Mich. 1980). The moving party bears the burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). The burden then shifts to the nonmoving party once the moving party has met its burden, and the nonmoving party must then establish that a genuine issue of material fact does indeed exist. *Janda v. Riley-Meggs Indus., Inc.*, 764 F. Supp 1223, 1227 (E.D. Mich. 1991).

As summarized by *St. Paul Fire & Marine Ins. Co. v. CEI Florida, Inc.*, 864 F. Supp. 656 (E.D. Mich. 1994), the Sixth Circuit has promulgated a "series of principles to be applied in motions for summary judgment:

> Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

> The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element as to a non-movant's case.
>
> This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.
>
> The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."
>
> The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.
>
> The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

*Id.* at 664-65 (citing *J.C. Bradford & Co.*, 886 F.2d at 1479-80 (footnotes with citations omitted)).

Analysis

Declaratory Judgment

Mr. McDonald correctly states the elements of declaratory judgment and many of these elements are met in this case. For example, a ruling in this case would serve a useful purpose in that legal relations are clarified. Likewise, there is no evidence of improper "procedural fencing" or the provisions of "an arena for res judicata." As the issues before this Court are solely based on federal law, there is no friction with state courts or an improper encroachment on state jurisdiction.

The first and last elements are more problematic. First, this declaratory action would settle a controversy between and among these 17 parties, but there are many other debtor attorneys and thousands of creditors who are not parties and would not be bound by the decision in this case.

Correspondingly, this huge number of potential individuals or entities who are not parties leads to a question as to whether an alternative remedy exists that may be better or more effective.

A deeper analysis is more troubling. Mr. McDonald alleges his discretion has been eliminated by the Order. This is partially true in that the Order sets requirements before he can approve a request to borrow. But no one has stated to the Court reasons why a particular element is unduly burdensome. One supposes a Chapter 13 Trustee has <u>some</u> requirements in order to approve a request to borrow, otherwise Trustee oversight would be worthless. And while Mr. McDonald argues strenuously that the Bay City Division is the only place where certain factors must be met before he can approve financing, this has its advantages. First, the elements are public and debtors and creditors alike know, or have a place to go to learn what those elements are. In other places, the approval of borrowing could be at the whim of a Trustee or, more disturbingly, a Trustee could apply different standards to different debtors or their counsel.

Next, Mr. McDonald argues he is caught in a dilemma of either following the Order and risking exposure to debtors and their attorneys or not following the Order and risking exposure to creditors. As to debtors or their counsel, this argument seems hollow because there is no contractual, legal, or constitutional right to have a low or lower cost Chapter 13 proceeding, however admirable that goal is. Chapter 13 is by definition more expensive than Chapter 7 – the no look fee is at least twice an attorney fee for a routine Chapter 7. As FinancialEdge points out, a protected right has not been identified. Also, the Model Plan allows debtors to sidestep the Trustee completely by filing a motion. This availability to the Court answers any due process concerns because debtors are given their "day in court."

Likewise, the argument that the Order directly conflicts with the Model Plan is imperfect. The Model Plan only speaks of Trustee approval. It does not say "unconditional approval." Again, the Order gives some structure to the approval process, as well as giving notice to all as to those elements. Also, the Model Plan allows debtors to petition the Court independently of the Trustee.

As to creditors, the Order acts as a safe harbor. Unlike any other Chapter 13 Trustee, Mr. McDonald enjoys a presumption if the elements of the Order are followed.

There is, however, a perceived need to readdress the Order and the Court is interested in hearing the need to change. At this stage of the case, summary judgment in favor of Mr. McDonald on Count III is premature and is denied.

## FinancialEdge Motion for Summary Judgment

FinancialEdge seeks dismissal of the Amended Complaint in its entirety. Initially, FinancialEdge did not address the Declaratory Judgment elements, but that issue was argued by the parties to the point that the Court concludes the case is not ripe for summary judgment. First, genuine issues of material fact remain open as to whether declaratory judgment will settle this controversy, which has simmered for decades and evolves over time. As a result, this Court also cannot determine if alternative remedies exist which are better or more effective.

Second, there is no agreement whether the Order has the effect of an order or is a contract between Mr. McDonald and FinancialEdge. Mr. McDonald posits it is an Order and therefore binding on him and others, thus forming the basis for his stare decisis argument. FinancialEdge argues the Order is a contract. While it strikes the Court that a role reversal has occurred here, neither party has explained how the last paragraph of the Order fits in their position. Mr. McDonald argues that stare decisis does not bind this Court to follow the Order. The Order, however, states this Court retains jurisdiction to hear and determine all matters arising from or related to the implementation and enforcement of the Order. On the other hand, FinancialEdge's argument that contractual law applies likewise renders this language as unnecessary or, if still effective, puts the issue of implementation and enforcement of the Order fully before this Court. The parties do not agree on the facts, so summary judgment is not appropriate, at this time. The parties do agree, however, that this Court is the forum to hear and determine the issues arising from or related to the Order: Mr. McDonald, by arguing that the doctrine of stare decisis allows

12

this Court to either follow the Order or write on a clean slate; FinancialEdge by arguing the terms of the Order give the Court that authority.

The Court now turns to the timeliness of the Plaintiffs' action under Federal Rule of Civil Procedure 60(b)(5) and (6), which requires a motion to set aside an order to be filed "within a reasonable time". The Order was entered on May 26, 2015 and the initial Complaint was filed on May 20, 2019. FinancialEdge cites *Blachy v. Butcher*, 129 F. App'x 173, 179 (6th Cir. 2005) for the proposition that these types of motions should be filed within 3 years.

As a stand alone proposition, the passage of time supports Financial Edge's position. The nature of the Order, however, assumed certain facts that now may no longer be as things were in 2015 and it is those facts which are in dispute and which may cause the Court to grant partial relief to Plaintiffs. To give guidance to the parties, the Court returns to the elements and conditions of the Order.

The Court has pondered the issues and arguments of counsel and requests additional information on the following issues:

1.  As to paragraph 1(a) of the Order, the Court sees merit in having the debtor represent, affirmatively, that plan payments are not in arrears, but a possible problem is that a plan arrears can often be quickly and easily cured, but not before a debtor can get a vehicle. Accordingly, the Court wonders if an explanation of how plan arrears can be cured is warranted when a debtor is not current on plan payments.

2.  As to paragraph 1(b) of the Order, this information appears straightforward, useful, and easy to provide, but there could be unforeseen difficulties the Court would like to hear, if present.

3.  As to paragraph 1(c), this information seems reasonable and adds a degree of discipline to financial budgeting. That said, there could be extraordinary circumstances that

13

19-02031-dob    Doc 284    Filed 05/25/22    Entered 05/25/22 11:05:44    Page 13 of 15

generally make compliance difficult or a specific instance where compliance is difficult. Either way, the Court needs additional facts.

4. As to paragraph 1(d), this requirement strikes the Court as one element that could use refining or outright change. As has been explained to the Court, vehicle financing has changed since 2015 such that this element warrants closer review. Or perhaps not.

5. As to paragraph 1(e), this information seems reasonable and adds a degree of discipline. Again, there could be extraordinary circumstances much as for paragraph 1(c).

6. As to paragraph 1(f), much of this paragraph sets forth requirements under the Code, but again the Court would be open to hear extraordinary circumstances as in paragraph 1(c) and (e).

These facts, and perhaps others, relate to the timeliness of Plaintiffs' actions. If the facts today are the same as in 2015, then Plaintiffs' request for relief may be untimely. If not, then the Order is more like the Order approving the settlement in *Charter Twp. of Muskegon v. City of Muskegon*, 303 F.3d 755 (6th Cir. 2002), where the Sixth Circuit Court of Appeals remanded a case involving an order that was 39 years old to allow the District Court to hold a hearing on whether that order should be enforced as written.

The Court listed these issues to identify initially the open questions of fact that the Court sees. Other issues of fact may exist or the ones identified by the Court may be non-issues or can be easily addressed.

Presently, the record is incomplete to the point where neither movant has met the requirements of Federal Rule of Civil Procedure 56 as articulated in *Street*, *Celotex*, or *Landis*. This record could perhaps be easily fortified to meet this standard, so the Court will schedule a status conference to explore this possibility.

To the extent FinancialEdge argues laches applies, this is an affirmative defense which places the burden of proof on FinancialEdge and there are unanswered questions of fact as to this defense.

Conclusion

Summary Judgment is not granted at this time because genuine issues of material fact remain such that the Court cannot find that either Mr. McDonald or FinancialEdge is entitled to judgment as a matter of law. Each Motion for Summary Judgment is DENIED. The Court will enter an Order consistent with this Opinion.

**Not for Publication**

**Signed on May 25, 2022**

/s/ Daniel S. Opperman

Daniel S. Opperman
United States Bankruptcy Judge